## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LINER TIRE, INC., TIRE TATTOO, INC., BARRY LINER, and MICHAEL LINER,<br><br>                 Plaintiffs,<br><br>   v.<br><br>CAP CALL, LLC; CAPITAL STACK, LLC; COMPLETE BUSINESS SOLUTIONS GROUP, INC. d.b.a. PAR FUNDING; ALEX CHASIN; EVEREST BUSINESS FUNDING, LLC; FUNDING METRICS, LLC, d.b.a.QUICK FIX CAPITAL; IOU FINANCIAL COMPANY; CURT KRAMER; JASON LEAK; MANTIS FUNDING, LLC; EVAN MARMOTT; MERCHANT DISCOUNT DIRECT, INC., PEARL CAPITAL REVIS VENTURES, LLC; POWERUP LENDING GROUP, LTD; PRINCIPIS CAPITAL, LLC; RAPID CAPITAL FINANCE, LLC; RICHARD NAIDICH; RTR RECOVERY, LLC; WIDE MERCHANT INVESTMENT, INC.; AND YELLOWSTONE CAPITAL, LLC,<br><br>                 Defendants. | Civil Action No.: 16-12468 |

## <u>MEMORANDUM IN SUPPORT OF POWER UP LENDING GROUP, LTD.'S MOTION TO DISMISS ALL CLAIMS AGAINST IT UNDER 12(b)(6)</u>

### I.    INTRODUCTION

With the present lawsuit, Liner Tire, Inc. ("Liner Tire") seeks to avoid its contractual

obligations to over a dozen unrelated companies. Liner Tire is a decades-old business that has

struggled in recent years. More than three years ago, Liner Tire started to address its financial

problems through factoring agreements with many different companies. Each such agreement

provided Liner Tire with an influx of much-needed cash. Liner Tire entered into the first

agreement on January 28, 2014. Second Amended Complaint ("SAC"), ¶ 81. On June 22, 2015,

after Liner Tire had already been pursuing this strategy for well over a year, it made its first

factoring agreement with defendant Power Up Lending Group, Ltd. ("Power Up"). Id. at ¶ 96.

Liner Tire repeatedly entered into these agreements as a sophisticated business, with open

eyes. Liner Tire now seeks treble damages and attorney's fees because the defendants gave Liner

Tire exactly what Liner Tire sought. See id. at ¶ 181. Incredibly, Liner Tire seeks damages from

Power Up even though the total amount Liner Tire has paid Power Up is less than the principal

amount Power Up advanced to it. Therefore, Liner Tire has not suffered any cognizable injuries

from Power Up's behavior.

Even if the Plaintiffs had a valid claim against Power Up, any such claim must be

brought in New York pursuant to a forum selection provision in the parties' contracts.

Moreover, if the District of Massachusetts were to hear any of these claims, the counts fail to

state a claim. Power Up therefore requests that this Court dismiss all claims against it.[1]

## II.   ALL CLAIMS AGAINST POWER UP SHOULD BE DISMISSED PURSUANT TO THE FORUM SELECTION CLAUSE.

The claims against Power Up should be dismissed based on the forum selection clause in

the parties' contracts. See Claudio-De Leon v. Sistema Universitario Ana G. Mendez, 775 F.3d

41, 46 (1st Cir. 2014) ("In this Circuit, 'we treat a motion to dismiss based on a forum selection

clause as a motion alleging the failure to state a claim for which relief can be granted under Rule

12(b)(6).'") (quoting Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009)).

Contracts containing forum selection clauses may be considered as part of the record on a motion

to dismiss without converting the proceedings into summary judgment. See id. Forum selection

clauses are not limited to breach of contract claims. See Lambert v. Kysar, 983 F.2d 1110, 1121-

---

[1] In a separate motion, Power Up moves to dismiss all claims by Tire Tattoo, Inc. and Michael Liner for lack of subject matter jurisdiction under Rule 12(b)(1).

1122 (1st Cir. 1993) ("contract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties."); Huffington v. T.C.Group, LLC, 637 F.3d 18 (1st Cir. 2011) (plaintiff alleged multiple statutory violations; court enforced the broad forum selection clause that encompassed claims brought "with respect to" the agreement).

A.   **Power Up, Liner Tire, and Barry Liner Agreed to Litigate in New York.**

The claims against Power Up center upon five agreements between Liner Tire and Power Up.[2] Of those five agreements, the four most recent ones contain an identical forum selection provision in favor of New York. That provision allows Power Up to require that any action arising under the contracts be instituted in the Eastern District of New York, and Power Up hereby asserts that right. The relevant provision provides:

> Any suit, action or proceeding arising hereunder or under the Security Agreement and Guaranty, or the interpretation, performance or breach hereof or thereof, shall, if POWER UP so elects, be instituted in the Supreme Court of the State of New York, County of Nassau or the United States District Court for the Eastern District of New York (the "Acceptable Forums"). Merchant and Owner/Guarantor hereby represent and warrant that they have sufficient contacts with the State of New York as a result of the transactions contemplated by this agreement. Merchant agrees that the Acceptable Forums are convenient to it, and submits to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue. Should such proceeding be initiated in any other forum, Merchant waives any right to oppose any motion or application made by POWERUP to transfer such proceeding to an acceptable forum.

See Exhibits A-D, Revenue Based Factoring Agreements, § 4.5. The "Merchant" is Liner Tire, and the "Owner/Guarantor" is Barry Liner. Those two plaintiffs therefore expressly agreed to litigate in New York.

This clause gives Power Up the right to require that any suit be brought in New York. A forum selection clause that gives one party the right of enforcement is valid. See Angeles v.

---

[2] The contracts are dated June 22, 2015 (Second Amended Complaint, ¶ 96); March 31, 2016 (id. at ¶ 105); August 25, 2016 (id. at ¶¶ 111-112; two agreements on that date); and September 14, 2016 (id. at ¶ 114).

Uson, 31 Mass.L.Rptr. 137, 2013 WL 1891135, at *3 (Mass. Sup. Ct. May 7, 2013) (assuming

that a forum selection clause that gives one party discretion is enforceable) (attached as Ex. E);

Eisaman v. Cinema Grill Systems, Inc., 87 F.Supp.2d 446, 450 (D. Md. 1999) ("That CGS has

discretion under the contract to decide whether it will require litigation in the Georgia courts

does not alter the mandatory nature of the clause. Accordingly, the court holds that the forum-

selection clause at issue is mandatory."); CQL Original Prods., Inc. v. National Hockey League

Players' Assn., 39 Cal.App.4th 1347, 1358 (1995) (enforcing forum selection clause that allows

one party the right to enforce).

B.      There Is a Strong Presumption In Favor of Enforcing Forum Selection
        Clauses.

The Supreme Court has held that, "when the parties' contract contains a valid forum-

selection clause, that clause 'represents [their] agreement as to the most proper forum,' and

should be 'given controlling weight in all but the most exceptional cases.'" Atlantic Marine

Const. Co., Inc. v U.S. Dist. Court for the Western Dist. of Texas, 134 S.Ct. 568, 574 (2013)

(quoting Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 31-33 (1988)). When the parties

agreed on a forum-selection clause, "the plaintiff's choice of forum merits no weight, and the

plaintiff, as the party defying the forum selection clause, has the burden of establishing that

transfer to the forum for which the parties bargained is unwarranted." Id. Moreover, when

considering a transfer, "the court should not consider the parties' private interests aside from

those embodied in the forum-selection clause; it may consider only public interests. Because

public-interest factors will rarely defeat a transfer motion, the practical result is that forum-

selection clauses should control except in unusual cases." Id.

Accordingly, the First Circuit will enforce a forum selection clause unless the opposing

party makes "a strong showing that it should be set aside." Carter's of New Bedford, Inc. v.

4

Nike, Inc., 790 F.3d 289, 292 (1st Cir. 2015) (quoting Bremen v. Zapata Off-Shore Co., 407 U.S.

1, 15 (1972)).

> A strong showing can exist where: (1) the clause is the product of fraud or overreaching;
> (2) enforcement is unreasonable and unjust; (3) its enforcement would render the
> proceedings gravely difficult and inconvenient to the point of practical impossibility; or
> (4) enforcement contravenes "a strong public policy of the forum in which suit is
> brought, whether declared by statute or judicial decision."

Id. (quoting Huffington v. T.C. Grp., LLC, 637 F.3d 18, 23 (1st Cir. 2011)). As discussed below,

First Circuit courts very rarely find this "strong showing" satisfied, and the Plaintiffs cannot

make that strong showing here.

### 1.    There Is No Evidence of Fraud or Overreaching That Would Justify Ignoring the Forum Selection Clause.

The Plaintiffs have brought fraud allegations, but those general fraud allegations cannot

defeat the forum selection clause. "While forum selection clauses may be voided based on fraud,

the fraud must relate to the inclusion of the forum selection clause as opposed to more

generalized allegations of fraudulent inducement." Huffington v. T.C. Group, LLC, 685

F.Supp.2d 239, 242 (D. Mass. 2010) (citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1,

15 (1972)). The Plaintiffs have not alleged any fraud relating to the forum selection clause.

The "overreaching" exception poses a high threshold that the Plaintiffs cannot meet. The

First Circuit has even enforced a forum selection clause in a contract between a hospital and a

patient. Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10 (1st Cir. 2009).  The First Circuit

acknowledged "suggestions of overreaching" because the patient's "relationship with the

hospital grew out of a grave medical condition. He was likely more focused on that medical

condition than the significance of the documents that he was asked to sign." Id. at 21.

Nonetheless, the First Circuit found that the forum selection clause was enforceable. Id. at 22.

**2.      Enforcement Would Not Be Unreasonable or Unjust, or Render
Proceedings Practically Impossible.**

Similarly, the Plaintiffs cannot establish that the clause should be ignored on the grounds

of unreasonableness or impossibility. This Court recently required a U.K. resident to defend a

lawsuit in Massachusetts because he agreed to a forum selection provision in a Restricted Stock

Unit Agreement with the plaintiff (his former employer). EMC Corp. v. Petter, 104 F.Supp.3d

127, 132 (D. Mass. 2015). This Court also recently enforced a forum-selection clause requiring a

Massachusetts resident, who was injured in South Africa, to bring suit in Australia, where the

defendant was located. Ameral v. Interepid Travel Party, Ltd., 128 F.Supp.3d 382, 396-399 (D.

Mass. 2015). The Court was not persuaded by the plaintiff's argument "that the forum-selection

clause is a contract of adhesion," or her argument "that it would be unreasonable for her to have

to prosecute her claims in Australia due to her weakened physical and financial condition." Id.

**3.      There Are No Public Policy Concerns That Would Justify Ignoring
the Forum Selection Clause.**

Finally, the Second Amended Complaint mentions public policy concerns, but there is no

basis for a public policy exception. New York has laws against usury, so changing the forum

from one state with anti-usury laws to another will not have a substantial impact on the parties'

rights. The Plaintiffs themselves have been careful to allege that the Defendants' conduct

violated both Massachusetts and New York law. See, e.g., SAC, ¶¶ 211-219 (Count VIII,

alleging that the "New York Defendants" violated N.Y. General Business Law § 349).

Moreover, this Court has recognized that a "provision for an alternative forum need not

infringe the public policy behind the enactment of consumer protection legislation and may well

serve other socially desirable goals at the same time." North American Consol., Inc. v. Kopka,

644 F.Supp. 191, 195 (D. Mass. 1986); see also Cross Roads R.V. Center, Inc. v. Textron Fin.

Corp., 609 F.Supp.2d 151, 153 (D. Mass. 2009) (enforcing a forum selection clause, and

explaining: "Cross Roads argues that it will be prevented from asserting violations of

Massachusetts consumer protection laws but that is not due specifically to the enforcement of the

forum selection clause (but rather the choice of law provision).")

Even if a change of forum did implicate public policy, however, the clause would still be

enforceable. The Supreme Court has held: "Because public-interest factors will rarely defeat a

transfer motion, the practical result is that forum-selection clauses should control except in

unusual cases." Atlantic Marine Const. Co., Inc. v U.S. Dist. Court for the Western Dist. of

Texas, 134 S.Ct. 568, 574 (2013).

### C.     The Forum Selection Clause Applies to Michael Liner and Tire Tattoo.

Michael Liner and Tire Tattoo have not set forth any cognizable dispute, but to the extent

that they are involved in the present lawsuit, this involvement is based on Liner Tire's

relationship with Power Up. The forum selection clause therefore applies to their claims. The

District of Puerto Rico has explained:

> It has been held that when the alleged conduct of non-parties to a contract is closely
> related to the contractual relationship, all participants, parties and non-parties, should
> benefit from and be subject to any forum selection clauses contained in the same. . . . In
> this case, it is evident that the main contractual relationship, the purchase agreement
> entered into between Popular and Thunder, was responsible for setting in motion all the
> secondary relationships that were later established, directly or indirectly, between
> plaintiff and the remaining co-defendants.

Banco Popular De Puerto Rico v. Airborne Group PLC, 882 F.Supp. 1212, 1216 (D.P.R. 1995).

Because the main contractual relationship between Liner Tire and Power Up set the secondary

disputes in motion, the forum selection clause applies to all claims. See Barletta Heavy Div., Inc.

v. Erie Interstate Contractors, Inc., 677 F.Supp.2d 373, 379 (D. Mass. 2009) (a "non-party may

be bound by a forum selection clause" if that party is "closely related to the dispute such that it

becomes foreseeable that it will be bound."); KTV Media Intern., Inc. v. Galaxy Group, LA

LLC, 812 F.Supp.2d 377, 387 (S.D.N.Y. 2011) (enforcing forum selection clause against

plaintiff whose allegations directly related to contract with a forum selection clause); see also

Herbert H. Landy Ins. Agency, Inc. v. Navigators Management Co., Inc., 2014 WL 3908179, at

*6 (D. Mass. 2014) ("It would be unfair to allow plaintiff to avoid a forum-selection clause by

creatively adding a defendant who is not a party to the contract.") (Ex. F).

## III.   THE PLAINTIFFS' CLAIMS AGAINST POWER UP FAIL.

As discussed in the foregoing section, Power Up has moved to dismiss all claims against

it pursuant to the forum selection clause. If this Court were to retain any claims against Power

Up, however, Power Up requests that this Court dismiss all counts against it: Count I (fraud),

Count II (93A), Count III (declaratory judgement), Count IV (injunction), Count V (unjust ·

enrichment), Count VI (breach of contract), Count VII (unconscionability), Count VIII (violation

of N.Y. General Business Law § 349), Count X (reformation), and Count XI (RICO violation).[3]

The Plaintiffs have not suffered legally cognizable damages; moreover, as discussed below, the

Plaintiffs have failed to plead colorable claims, and some of those "counts" are not causes of

action in Massachusetts.

### A.   Plaintiffs' Fraud Claim (Count I) Does Not Meet the Heightened Pleading Standard.

Fraud claims are subject to a heightened pleading standard: "In alleging fraud or mistake,

a party must state with particularity the circumstances constituting fraud or mistake." Fed. R.

Civ. P. 9(b). In fraud cases, "the pleader usually is expected to specify the who, what, where, and

when of the allegedly false or fraudulent representation." Alternative System Concepts, Inc. v.

---

[3] Count IX ("Intentional Interference with Contract and/or Business Relationships") is against only against RTR Recovery and Cap Call, and moreover, Plaintiffs have dismissed those defendants. Plaintiffs voluntarily dismissed Count XII and the defendants named under that count (Doc. No. 26; Doc No. 32).

Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004). This claim against *twenty* defendants does not identify a single specific communication by Power Up that was allegedly fraudulent.

Moreover, the plaintiffs have not pled facts that would satisfy the other elements of a fraud claim. "The elements of fraud are '[1] a false representation of a material fact, [2] with knowledge of its falsity, [3] for the purpose of inducing the plaintiffs to act on this representation, [4] that the plaintiffs reasonably relied on the representation as true, and [5] that they acted upon it to their damage.'" Com. v. Lucas, 472 Mass. 387, 394; 34 N.E.3d 1242, 1249 (2015) (quoting Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc., 455 Mass. 458, 471; 918 N.E.2d 36, 47 (2009)).

The Plaintiffs do not allege that the Defendants ever deceived them. Instead, the Plaintiffs claim that all parties viewed the transactions as loans. The Plaintiffs allege: "Defendants fraudulently induced Liner Tire to enter into the transaction by misrepresenting their true nature," and that "Defendants actively solicited the transactions from Liner Tire by affirmatively representing that they were providing in substance, or, in fact, a loan." SAC, ¶¶ 162; 164.[4] Yet Liner Tire's Complaint is based on the premise that these agreements were, in fact, loans. See, e.g., id. at ¶ 10 ("Plaintiffs seek to declare the common instrument used by Defendants for what it is — a criminally usurious loan."). If these agreements were loans, it could not be fraud for the Defendants to say so.

Liner Tire also alleges that Defendants misrepresented the nature of certain fees. Once again, these allegations fail for lack of specificity. Moreover, Liner Tire has not provided any basis for alleging that the alleged misrepresentation was material, or that Liner Tire reasonably relied on those statements to its detriment. See Commerce Bank & Trust Co. v. Hayeck, 46

---

[4] See also id. at ¶ 166 ("Defendants . . . falsely represented the market value of the future receivables that Defendants falsely purported to purchase. This . . . was a knowingly false representation unilaterally made by Defendants in order to disguise the true nature of the transaction.").

Mass.App.Ct. 687, 692; 709 N.E.2d 1122, 1126 (1999) (elements of fraud in the inducement include "misrepresentation of a material fact, made to induce action, and reasonable reliance on the false statement to the detriment of the person relying").

**B.     Tire Tattoo, Inc. and Michael Liner Have No Cause of Action under M.G.L. c. 93A (Count II).**

Plaintiffs Tire Tattoo, Inc. and Michael Liner have no basis for suing under M.G.L. c. 93A because none of the allegedly wrongful conduct involved them. The 93A count alleges that the Defendants violated a criminal usury statute (SAC, ¶ 174), but neither Tire Tattoo, Inc. nor Michael Liner allege that any Defendant loaned them money. The 93A count also alleges that Defendants violated a statute regarding confessions of judgment (id.), but neither Tire Tattoo, Inc. nor Michael Liner allege that they agreed to confess judgment. This count includes allegations of misrepresentations (id. at ¶ 176), but Tire Tattoo, Inc. and Michael Liner do not allege that the misrepresentations were made to them. Finally, this count alleges that Defendants included unconscionable provisions in loan agreements (id. at ¶ 177), but Tire Tattoo, Inc. and Michael Liner have not alleged that they were parties to those agreements.

Tire Tattoo, Inc. and Michael Liner cannot bring 93A claims that are entirely derivative of Liner Tire's allegations. See 4MVR, LLC v. Hill, 2015 WL 3884054, at *7 (D. Mass. June 24, 2015) (finding that plaintiff Hill lacked standing to pursue a 93A claim premised on misrepresentation and fraud; "the claims asserted by Hill are derivative of Hill Construction's claims and, therefore, Hill lacks standing to assert them in his own name.") (Ex. G); Balerna v. Gilberti, 281 F.R.D. 63, 69 (D. Mass. 2012) (the court had "observ[ed] at trial that Coppola's invocation of the criminal usury statute seemed pointless in that his client, Harriet Balerna, would in any event have no standing to seek relief under it. Under the statute, only the borrower is entitled to such relief"); Balerna v. Gilberti, 2010 WL 4878286, at *7 n. 13 (D. Mass. Nov. 24,

2010) ("Although the usury charge permeated many of the pleadings and the trial, it was never

argued in the Complaint, nor could it be, as the criminal statute does not confer standing on any

private citizen except the person to whom the loan was made. See Mass. Gen. Laws ch. 271, §

49.") (Ex. H). Tire Tattoo, Inc. and Michael Liner's 93A claims should be dismissed.

### C.   Plaintiffs Have Not Alleged That Power Up Was Ever Unjustly Enriched (Count V).

Liner Tire brings a claim of unjust enrichment, but it does not plead facts alleging that

Power Up was ever unjustly enriched. "A plaintiff asserting a claim for unjust enrichment must

establish not only that the defendant received a benefit, but also that such a benefit was unjust, 'a

quality that turns on the reasonable expectations of the parties.'" Metropolitan Life Ins. Co. v.

Cotter, 464 Mass. 623, 644; 984 N.E.2d 835, 850 (2013) (quoting Global Investors Agent Corp.

v. National Fire Ins. Co., 76 Mass.App.Ct. 812, 826; 927 N.E.2d 480 (2010)). Liner Tire has not

identified a single benefit that Power Up unjustly received.

Conspicuously, Liner Tire alleges that the defendants charged criminally usurious interest

rates (SAC, ¶ 198), but it does not allege that it ever repaid the entire principal, let alone interest

above the statutory rates. That allegation is missing because it would be untrue. To date, Liner

Tire has repaid Power Up less than the total principal that Power Up provided. Power Up has

suffered a financial loss, not enrichment, from its relationship with Liner Tire.

Liner Tire's sweeping unjust enrichment claim does not merely seek repayment of excess

interest. Instead, Liner Tire asks this Court to order "Defendants to repay Liner Tire all principal

and interest previously paid to Defendants in connection with the criminally usurious loans,

including prejudgment interest[.]" Id. at ¶ 201(b). If this Court were to award this relief, *Liner

Tire* would be unjustly enriched. Liner Tire bases its request on the allegation that "[e]quity and

public policy dictate that Defendants should not be allowed to receive any amounts paid in

connection with the criminally usurious loans" (id. at ¶ 201), but that is incorrect. Equity and

public policy provide that, even when an agreement constitutes a "criminally usurious loan," the

agreement may be reformed. See Balerna v. Gilberti, 281 F.R.D. 63, 70 n. 8 (D. Mass. 2012) ("a

usurious loan is not void *ab initio*, but is subject to reformation.").

### D. Plaintiffs' Breach of Contract Claim (Count VI) Does Not Allege a Single Contractual Breach.

The Plaintiffs' breach of contract claim does not contain any allegation that the

defendants breached a contractual provision. The Plaintiffs quote one contractual provision, but

they do not show that any defendant breached it. The Plaintiffs allege:

> With the exception of the IOU, Capacity and EBF loans, each of the agreements provides or similarly provides: "In the event that a court determines that [Defendant] has charged or received interest hereunder in excess of the highest rate allowed by law, then the rate in effect hereunder shall automatically be reduced to the maximum rate allowed by applicable law and [Defendant] shall promptly refund to Merchant any interest received by [Defendant] in excess of the maximum lawful rate, it being intended that Merchant not pay or contract to pay, and that [Defendant] not receive or contract to receive, indirectly or indirectly in any manner whatsoever, interest in excess of that which may be paid by Merchant under applicable law."

SAC, ¶ 204 (emphasis added).

The Plaintiffs never allege that any defendant breached this provision. This provision

does not create any obligations until "a court determines" that a defendant charged or received a

higher interest rate than allowed by law, but the Plaintiffs do not allege that any court has made

that determination. Moreover, the Plaintiffs do not allege that the defendants actually received

interest "in excess of the maximum lawful rate." Without actual payments above the maximum

lawful rate, the Defendants have nothing to repay. The Plaintiffs have failed to allege either the

prerequisite judicial determination, or the existence of excess interest payments, so this breach of

contract claim should be dismissed.

**E.     N.Y. General Business Law § 349 (Count VIII) Does Not Apply to This Private Dispute.**

Plaintiffs allege that the Defendants violated the New York Deceptive Acts and Practices law, but that statute does not apply to private arrangements between corporations. "[P]laintiffs claiming the benefit of section 349 — whether individuals or entities such as the plaintiffs now before us — must charge conduct of the defendant that is consumer-oriented." Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 25 (N.Y. 1995). The Plaintiffs' claim fails because it alleges business-oriented conduct, and because there is no broader impact on consumers.

Importantly, the four 2016 factoring agreements themselves provide: "Merchant [Liner Tire] is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes." Exhibits A, B, C, D, § 2.12 (paragraph captioned "Business Purpose").

A business-oriented transaction cannot sustain a claim under section 349. United Teamster Fund v. MagnaCare Admin. Servs., LLC, 39 F.Supp.3d 461, 474 (S.D.N.Y. 2014). A transaction may be business-oriented if, for example, "large amounts of money are at stake." Id. The Plaintiffs have alleged that the individual transactions were "loans" for tens of thousands of dollars. Moreover, factoring agreements based on accounts receivable are inherently business arrangements, and "[c]ontracts to provide commodities that are available only to businesses do not fall within the parameters of § 349." Id.

Additionally, under section 349, the Plaintiff "must demonstrate that the acts or practices have a broader impact on consumers at large. Private contract disputes, unique to the parties, for example, would not fall within the ambit of the statute." Oswego Laborers' Local 214 Pension

Fund, 85 N.Y.2d at 25. The Second Amended Complaint does not allege consumer-oriented

conduct with a broad impact on consumers. The Plaintiffs try to satisfy this requirement by

alleging that the Defendants' conduct impacted "the personal and household assets of an

individual," and "the employees of Liner Tire and the family members of Barry Liner." SAC, ¶¶

212-213. Those allegations miss the point. Even if employees and family members experience

collateral effects of a business arrangement, those employees and family members were not

directly affected, so they are not consumers within the meaning of the statute. See Benetech, Inc.

v. Omni Fin. Group, Inc., 116 A.D.3d 1190, 1191 (N.Y. App. Div. 2014) ("[I]t is undisputed that

defendant contracted with the plan sponsors, i.e., the relevant school districts, and not the

districts' individual employees, the latter of whom selected their particular investment options

from the list of service providers chosen by their employers. School districts, as business-like

entities, cannot properly be viewed as consumers for purposes of General Business Law §

349").[5] Count VIII should be dismissed.

F.     18 U.S.C. § 1962(b) (Count XI) Is Inapplicable to the Plaintiffs' Allegations.[6]

The Plaintiffs seek to sue the corporate defendants under § 1962(b) of the RICO statute.

That section prohibits "acquiring control of a business engaged in interstate commerce" through

racketeering or unlawful debt collection (International Floor Crafts, Inc. v. Adams, 578

F.Supp.2d 231, 234 (D. Mass. 2008)), but the Plaintiffs have not alleged that Power Up ever

acquired control of a business. The Supreme Court has held:

> § 1962(b) states that it "shall be unlawful for any person through a pattern of racketeering
> activity or through collection of an unlawful debt to acquire or maintain, directly or

---

[5] Moreover, neither Michael Liner nor Tire Tattoo allege a direct injury, which this statute requires. See discussion in Memorandum in Support of Motion to Dismiss for Lack of Subject Matter Jurisdiction.
[6] The Plaintiffs have attempted to dismiss this claim under Rule 41(a)(1). Doc. No. 32. Power Up moves to dismiss this claim, in an abundance of caution, in the event that this Court finds that dismissal was not effective. Fed. R. Civ. P. 15(a) "is the proper vehicle to drop some but not all claims against a defendant or defendants." Addamax Corp. v. Open Software Foundation, Inc., 149 F.R.D. 3, 5 (D.Mass 1993).

indirectly, any interest in or control of any enterprise which is engaged in, or the
activities of which affect, interstate or foreign commerce." The "enterprise" referred to in
subsections (a) and (b) is thus something acquired through the use of illegal activities or
by money obtained from illegal activities. The enterprise in these subsections is the
victim of unlawful activity[.]

National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 258-259 (1994). The

Plaintiffs have not alleged that any of the corporate defendants, including Power Up, acquired an

interest in or control of an enterprise through racketeering or collecting unlawful debts.

At most, the Plaintiffs have alleged that the corporate defendants have a right to collect

principal and interest from Liner Tire. See SAC ¶ 8 (alleging that the agreements "are nothing

more than a collateralized loan."). Those allegations do not state a claim under § 1962(b). See

NCNB Nat. Bank of North Carolina v. Tiller, 814 F.2d 931, 936 (4th Cir. 1987) ("Appellants

contend that NCNB's right to demand payments on the notes gave it the power to control both

Souther and Williamson. This is ludicrous"); Matrix IV, Inc. v. American Nat. Bank and Trust

Co. of Chicago, 2007 WL 853968, at *9 (N.D.Ill., Marc. 15, 2007) (dismissing claim under

1962(b): "Agreeing to loan money to an enterprise is not acquiring an interest in that

enterprise.") (Ex. I).

### G. Four Counts Do Not State Causes of Action.

Of the twelve counts in the Second Amended Complaint, four are not causes of action.

Count III (declaratory judgment), Count IV (injunction), Count VII (unconscionability) and

Count X (reformation) should be dismissed.

#### 1. Count III: "Declaratory Judgment/Criminal Usury/Personal Jurisdiction"

The Plaintiffs' third claim seeks a declaratory judgment on five issues. SAC, ¶ 193. "A

declaratory judgment is not a cause of action, but a form of relief." Schwartz v. CACH, LLC,

2013 WL 6152343, at *2 (D. Mass. Nov. 21, 2013) (citing Ernst & Young v. Depositors

Economic Protection Corp., 45 F.3d 530, 534 (1st Cir. 1995) and Madden v. State Tax Com.,

333 Mass. 734, 737; 133 N.E.2d 252,254 (1956)) (Ex. J); see also In re Fustolo, 2015 WL

1399045, at *14 (D. Mass. Mar. 24, 2015) ("The Court concludes that the Debtor is correct in

asserting that Count I [injunctive relief] merely sets forth a request for a remedy and does not

state a cause of action. . . . For that reason alone, Count I may be dismissed for failure to state a

plausible claim.") (Ex. K).

The Plaintiffs' request for "a declaratory judgment that the loans are void *ab initio* as

criminally usurious" (SAC, ¶ 193(a)) would fail even if the Plaintiffs had made this request in an

acceptable manner.[7] Under Massachusetts law, "a usurious loan is not void *ab initio*, but is

subject to reformation." Balerna v. Gilberti, 281 F.R.D. 63, 70 n. 8 (D. Mass. 2012).

Similarly, the Plaintiffs' request for a declaratory judgment that they are not subject to

New York jurisdiction (SAC, ¶ 193(d)) is inappropriate because it contradicts the forum

selection clause that Liner Tire and Barry Liner signed. As discussed above, that clause provides,

in part: "Merchant [Liner Tire] and Owner/Guarantor [Barry Liner] hereby represent and warrant

that they have sufficient contacts with the State of New York as a result of the transactions

contemplated by this agreement." Exhibits A-D, § 4.5. Moreover, even without that contract, the

Plaintiffs' conduct in pursuing, negotiating, and accepting, factoring agreements from New

York-based companies would suffice to establish personal jurisdiction in New York.

### 2.    Count IV: "Injunction"

This request for an injunction contains almost no substance. Liner Tire merely repeats the

previous allegations (SAC ¶ 194), claims that it "is entitled to a permanent injunction" (SAC ¶

195), and then requests an injunction. A request for an injunction is not a cause of action, and

this count should be dismissed. See Woods v. Wells Fargo Bank, N.A., 733 F.3d 349, 353 n. 3

---

[7] Plaintiffs do make this request elsewhere. SAC, ¶ 201 (in the "Unjust Enrichment/Disgorgement" count).

(1st Cir. 2013) ("injunctive relief is not a stand-alone cause of action in Massachusetts"); <u>Koufos</u> <u>v. U.S. Bank, N.A.</u>, 939 F.Supp.2d 40, 46 (D. Mass. 2013) ("An injunction is not a cause of action, but a remedy. Accordingly, the Court denies this cause of action, but injunctive relief may be available if Koufos succeeds on the merits of his remaining claims.") (internal citations omitted).

### 3.    Count VII: "Unconscionability"

The Plaintiffs bring a claim for unconscionability, but "[u]nconscionability . . . is an affirmative defense and not a stand-alone cause of action." <u>La Casse v. Aurora Loan Services, LLC</u>, 2016 WL 4535338, at *7 (D. Mass. Aug. 30, 2016) (dismissing a count that alleged unconscionability) (<u>Ex. L</u>); <u>see also</u> <u>Miles v. Beneficial Massachusetts, Inc.</u>, 22 Mass.L.Rptr. 161, 2007 WL 738699, at *5 (Mass. Sup. Ct. Feb. 12, 2007) ("As Counts III ('unconscionability') and IV ('tort') fail to state an independent cause of action and are, in any event, redundant to allegations included in the other counts of the complaint, Counts III and IV are DISMISSED.") (<u>Ex. M</u>).

### 4.    Count X: "Plead in the alternative, Reformation"

Finally, reformation is a type of relief, not a cause of action. <u>See</u> <u>Diviacchi v. Affinion Group, Inc.</u>, 2015 WL 3631605, at *18 (D. Mass. Mar. 11, 2015) ("Likewise, 'rescission and reformation are remedies, not causes of action.' . . . Accordingly, Count VIII is subject to dismissal to the extent it pleads a cause of action for cancellation, rescission, receivership, restitution, and/or injunction.") (quoting <u>In re Bruce</u>, 2012 WL 3133932, at *6 (Bkrtcy.D.Mass. Aug. 1, 2012)) (<u>Ex. N</u>).

## CONCLUSION

Power Up requests that this Court enforce the forum selection provision by dismissing all the claims against it, with instructions that the Plaintiffs must re-file (if at all) in the Eastern District of New York. Alternatively, Power Up requests that this Court transfer all claims against it to the Eastern District of New York.

If this Court retains any of portion of the claims against Power Up, Power Up requests that this Court dismiss Count I (fraud), Count II (93A), Count III (declaratory judgment), Count IV (injunction), Count V (unjust enrichment), Count VI (breach of contract), Count VII (unconscionability), Count VIII (violation of N.Y. General Business Law § 349), Count X (Reformation), and Count XI (RICO violation).

Respectfully submitted,

*/s/ Erika Todd*
Lisa G. Arrowood (BBO# 022330)
larrowood@arrowoodpeters.com
Erika Todd (BBO # 689053)
etodd@arrowoodpeters.com
ARROWOOD PETERS LLP
10 Post Office Square
7th Floor South
Boston, MA  02109
February 16, 2017                    (617) 849-6200

## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2017 this document has been filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Erika Todd*